ANN W. WOOD *vs.* THOMAS BRUCE.—*December Term,* 1837.

If a party having applied to a Court of Equity for an injunction, be frustrated, afterwards apply to another court of concurrent jurisdiction, upon the same grounds, without disclosing the first application, the party aggrieved may apply in a summary way for relief, and the court in which the second cause is depending, will at once extend it to time.

But where the second application is not upon the same identical grounds as the first, the injunction granted upon the former, should not be dissolved without answer, or at all events, without notice to the complainant.

And the circumstance that a long period had elapsed, from the time the second bill was filed, before any proceeding was adopted by the defendant, is an additional reason why an answer should be required.

APPEAL from *Chancery*, from an order dissolving an injunction.

On the 28th September, 1824, *Ann W. Wood* filed her bill on the equity side of *Charles* county court, alleging, that in the year 1818, she purchased of a certain *William Strickland*, a negro woman on credit, for the sum of $500, for which she executed her bill obligatory to him; that said negro belonged to a certain *John Peirce*, who devised her to be free at the age of twenty-one years; that said negro was upwards of twenty-one years of age when she purchased her, at which time she had never seen the will of *Peirce;* that *Strickland* assigned his bond to *T. Bruce*, who sued the complainant to judgment; that a *fi. fa.* has been issued thereon and levied. That the negro has recently filed a petition for freedom in *Charles* county court; that the complainant has been summoned to answer that petition, and the protection of the court granted to said negro. That *Strickland* gave a bill of sale for the negro to complainant, and that he was fully cognizant of the will in favour of the negro, and that *Bruce*, the assignee, was also perfectly aware of her claim to freedom. The short copy of the judgment, will, protection of the court, and bill of sale, were filed with the bill: this prayed a *subpœna* against *Strickland* and *Bruce*, for an injunction and general relief.

On this bill an injunction issued, at August term, 1837.

On the suggestion and application of *Thomas Bruce*, the cause was removed to the court of Chancery, where, on the 11th September, 1837, he filed his petition, suggesting, that on the 12th January, 1824, *Ann W. Wood* filed her *bill in Chancery* against the said *Bruce* and *William Strickland*, since deceased, to obtain an injunction to stay the execution of the judgment at law, mentioned in the bill in this cause; that the injunction was issued, and subsequently dissolved, to wit, at July term, 1824, and afterwards, that said bill was dismissed. The petitioner alleged, that after the bill was dismissed, to

wit: on the 28th September, 1824, the said *Ann W. Wood* filed her bill on the equity side of *Charles* county court, and obtained an injunction upon the identical same grounds, and equities, which she had alleged in her aforesaid bill, without disclosing to the judges of *Charles* county court, the fact of the previous proceedings in this court, and that this proceeding of the said *Ann Wood* is not only embarrassing and vexatious to him, but is a gross abuse of the process and authority of this court, and deserves its animadversion; and the said petitioner further alleged, that he has caused the papers and proceedings in the last mentioned case to be transferred from *Charles* county court to this court, in order that the court, by a comparison of the bills filed in the two cases, may see, that they are both founded on the same equity, and are in substance the same cause, between the same parties, and seek the same relief—that all the money is yet due on the judgment, and he therefore prays that your honour will at once, and without further proceeding or delay, cause the aforesaid injunction to be dissolved and the bill dismissed.

With this petition there were filed the proceedings in the *first* cause, the nature and character of which, are sufficiently adverted to in the opinion of *this* court, to supersede the necessity of a further statement of them.

On the 11th September, 1837, the chancellor on inspection of the petition, and the two records, ordered that the injunction granted on the bill filed in *Charles* county court, be annulled and dissolved, as prayed for—and from this order the said *Ann W. Wood* having obtained an *allocatur*, from his honour Judge *Stephen*, brought the present appeal.

The cause was argued before ARCHER, DORSEY, and SPENCE, Judges.

By ALEXANDER, for the appellant:

Who insisted that the equities of the two bills were not the same, and that the dissolution was too summary, he cited: *Johnson vs. Stagg*, 2 *John. Rep.* 519. *Wicks, et al vs. Chew*,

*et al*, 4 *Har. and John*. 543.   *Brown vs. Wallace*, 4 *Gill and John*. 495.

J. JOHNSON, in reply, contended:

That the two bills were substantially alike, and that the power of the court was properly exercised.  *Bampus vs. Platner, et al*, 1 *John. C. R*. 213.   *Brown vs. Wallace*, 4 *Gill and John*. 494, 495.   *Reynolds vs. Pitt*, 19 *Ves*. 134.

ARCHER, Judge, delivered the opinion of the court.

The petition of *Bruce* to the chancellor for his summary interposition in- dissolving the injunction obtained by the complainant in September, 1824, in *Charles* county court, is founded on the allegation, that the complainant's equities, as presented by his bill, were identical with those alleged, in a bill by the same complainant against the same defendant, on which an injunction was obtained on the January preceding, in the Chancery court, and which had been dissolved in that court, in the month of July, 1824; and that the second injunction was obtained without disclosing to the *Charles* county court, the proceedings had in the Chancery court.

Cases undoubtedly, may often occur, where parties availing themselves of the concurrent power of the county courts in equity proceedings, may for purposes of vexation and delay, being frustrated in the one tribunal, resort to the powers of the other; and by failing to disclose such proceedings as may have been had, obtain by gross abuse of the process and powers of the court, relief in the preventing and restraining power of the court.   And when such a case occurs, it is a salutary practice, to apply in a summary manner the powers of the court, to relieve the parties from such vexatious proceeding; and to disabuse the court, in being for an instant, the instrument of oppression.   And the question submitted is, whether the case before us be one of that description.

The bill of January, 1824, rested solely upon the allegation, that the negro claimed her freedom, not pretending that

she had been deprived of her property or in any manner disturbed in the enjoyment of it, and sought an inquiry into the consideration of the note, and a perpetual injunction.

The bill of September, 1824, alleges a sale of the negro with knowledge of her claim to freedom; and avers knowledge of such claim also in the assignee of the single bill; avers the pendency of a petition for freedom by the negro, and prays a temporary injunction until the right to freedom shall be determined on the petition, which had been filed in September, 1824.

Whether the second bill presents indisputably and clearly a case for the equitable interposition of a court of equity, it is not perhaps necessary to inquire; the question to be decided, being, whether the case made by the first, and by the second bills, are identical. Between the dismissal of the first bill, and the institution of the second, a litigation had commenced in a court of common law, which in its event might deprive the complainant of the negro. This, together with the averment of knowledge on the part of the seller and the assignee of these claims, furnish the groundwork of the second bill. For any thing which appeared in the first bill, the complainant might never have been in any manner disturbed in the possession of the negro. They were claims set up, but not sought to be enforced, and might never be attempted to be enforced in the proper tribunals.

In this view of the case it strikes us, that the equities of the two bills are different, and that the injunction should not have been dissolved without answer, or at all events, without notice to the complainants.

The fact too, that this bill has been suffered to remain for a period of thirteen years without answer, all the while the injunction remaining in full force, while from the course of practice in the common law courts, the petition for freedom must have long since been decided, are circumstances which we think ought to induce a court of equity to require an answer from the defendant, and listen with no favourable ear to an application for the intervention of its summary powers,

when, if it were true, that the petitioner had been adjudged to be a slave, an answer of that fact would have at once procured a dissolution of the injunction; while, if on the other hand, the petitioner had been some ten or twelve years since adjudged to be free, the causes for the absence of an answer would be easily furnished, and the application, now on appeal before us, satisfactorily accounted for.    The order of the chancellor dissolving the injunction in this case, will be reversed with costs, and the cause be remanded to the Chancery court for further proceedings.

ORDER REVERSED.